REYNOLDS v. LEYDEN et al.

(Supreme Court, Appellate Division, Fourth Department. December 18, 1897.)

1. SALE OF STOCK—FRAUDULENT REPRESENTATIONS—PARTIES AFFECTED.
    Plaintiff was induced by fraudulent representations to purchase stock of a corporation from the directors and principal stockholders, and evidence was admitted as to false representations made by individual directors and stockholders, and was confined by the court to them only. In charging the jury, the court omitted to state whether such evidence was applicable to all the vendors of stock. Evidence was introduced connecting all the defendants with the transaction. An instruction asked by defendants to the effect that the individual representations of certain of them did not bind the others was refused. *Held*, that the court erred in not clearly stating the extent to which the representations of those to whom the representations were confined was binding upon all the parties to the transaction, and the refusal of the instruction asked by defendants did not cure the defect.

2. SAME.
    Where plaintiff is induced by the fraudulent representations of certain directors and stockholders of a corporation to purchase stock, some of which is owned by each of the directors and stockholders, who receive their share of the price paid therefor, the representations of the individuals are binding upon all, and each becomes responsible therefor.

3. SAME—EVIDENCE.
    In an action for damages on account of having been fraudulently induced to purchase stock in a corporation which was insolvent, the report of the receiver who was subsequently appointed to wind up the business is admissible to show the assets and liabilities of the corporation.

Appeal from trial term, Monroe county.

Action by John A. Reynolds against Maurice Leyden and others. From a judgment for defendants, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

Appeal from a judgment entered in Monroe county clerk's office on the 24th of November, 1896, in favor of the defendants, for costs, upon a verdict, and from an order denying a motion for a new trial upon the minutes of the trial judge. The defendants were officers and stockholders of a business corporation transacting its business in Rochester, N. Y., by the name of the Proctor-Raymond Electric Company. The business of this company was manufacturing and selling electric bells, annunciators, electrical supplies, and other electric goods, under letters patent. The complaint alleges: That about the 1st of April, 1895, the defendant Leyden, acting in his own behalf and for the other defendants, and in combination with them, in order to induce the plaintiff to become a stockholder in this company, and president and managing director thereof, and to advance a large sum of money to the company, falsely and fraudulently represented to him that the business of the company was prosperous (a good, paying business), and that their goods were sold at a large profit (some at least of 100 per cent.), and the business only required a manager; that the estimated value of the materials and merchandise of the corporation on hand was $14,000, not including the patents, but that a true inventory would show it to be much more; that the company had money enough in the banks to provide for small bills coming due, and the debts of the company did not exceed $29,883.17. That defendant Leyden was the president, Proctor was the vice president, and Richards was the secretary and treasurer, of the company, and defendant Roe was its counsel. That all the defendants were directors of the company, except Walker, who was a stockholder. That defendants Proctor, Richards, Raymond, and Roe participated with Leyden in these representations, and that they, with him, represented the other defendants, after consultations had with them. That the plaintiff, relying upon these representations, consented to be elected as president and managing director of the concern, and that he advanced about $7,000 to the company. That the representations were false, to the knowledge of the parties making them, and that the plaintiff was thereby defrauded out of his money. The defendants put in issue these several allegations in their answers, except that they admitted the existence of the corporation, and the official relations of the defendants thereto, but they denied that the defendant Raymond was a director. It appeared upon the trial, by the evidence of the plaintiff, that the representations set forth in the complaint were made to him; that he accepted the office of president and managing director, took charge of the business, received stock in the corporation held by the several defendants, and invested $7,000 in the business of the corporation, which the defendants, with others, had the benefit of; that, after managing the business for a few weeks, he discovered the fraud practiced upon him, dissolved his connection with the concern, and sought to rescind the contract he made with it, and commenced this action to recover damages; that the company went into the hands of a receiver. And there was evidence tending to establish the plaintiff's cause of action, and that the corporation was insolvent at the time the plaintiff became connected with it. Other facts will appear in the opinion of the court.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

John Van Voorhis, for appellant.

George F. Yeoman, for respondents.

WARD, J. The only questions presented by the appellant upon this review relate to the rulings of the trial court as to the admission and effect of evidence. The chief complaint of the appellant is that the trial judge so ruled upon the application of the evidence as to the several defendants, and as to all of them, as to confuse the jury, and leave their minds in a state of uncertainty as to the responsibility of any or all of the defendants for the fraud that the plaintiff claims was perpetrated upon him. Early in the course of the trial the plaintiff's counsel proved the incorporation of the Proc-

tor-Raymond Electric Company; that all the defendants had been named as directors in the articles of incorporation, except Nelson H. Raymond, and that the defendants were the principal stockholders in the corporation; that its capital stock had been increased from $20,000 to $30,000 by the stockholders, the defendants participating therein, and they were active in carrying on the business of the corporation for two years prior to the 1st day of April, 1895; that the plaintiff, being desirous of engaging in some business, met the defendant Leyden, and had a conversation with him about going into the company; that he had taken the plaintiff to the works of the corporation, in Rochester, and had introduced him to the defendants Proctor, Raymond, and Richards, and had said to Proctor and Raymond that the plaintiff wanted to look through the works and see how the business was carried on, and to show the plaintiff through, which they did; that afterwards the representations contained in the foregoing statement were made to the plaintiff,—principally by Leyden, and to some extent by Proctor, Richards, and Raymond. And, in the course of stating the representations, objection was made by the defendants' counsel that the evidence was incompetent, as against each of the defendants except Leyden and Richards. The court held that it would receive the evidence, "at present, as simply against the defendant Richards," to which ruling the plaintiff's counsel excepted. The particular evidence that the objection was aimed at was to a statement made by Richards. A similar ruling and exception were had as to the statements of Leyden to the plaintiff; the court confining the evidence as against Leyden alone. A number of rulings followed, of the same character, some of which were excepted to, and others were not; the court in each instance confining the evidence to the particular defendant or defendants who made the statement. Further proof was given by the plaintiff tending to connect all of the defendants in the transaction which resulted in obtaining the plaintiff's money. A statement of the liabilities of the company was made from its books, which was presented to the plaintiff by the defendants Leyden and Richards, and offered in evidence; but it was excluded as against all of the defendants except Richards, Leyden, and Raymond. The plaintiff then offered in evidence a written agreement between the plaintiff and all the defendants except Proctor, whereby the defendants executing the paper transferred stock held by them severally to the plaintiff, as a part of the transaction of obtaining the plaintiff's money. This was received without objection. It is unnecessary to set forth in detail all the evidence connecting the defendants with obtaining the plaintiff's money, as enough was shown to raise a question for the jury, whether the defendants were not all connected with the active defendants who did the business with the plaintiff, and that the act of each defendant, therefore, in carrying out the general purpose of all the defendants, was evidence against all. If any doubt existed, for want of proof as to the general purpose at the time that the first exception was taken to the rulings we are considering, as to the competency of the evidence against all of the defendants, it was no longer doubtful after the plaintiff's proof was all submitted

upon the subject. At the close of the evidence, and before the charge of the court, the record discloses the following:

"Whereupon the counsel for the plaintiff asked the court to rule that by taking the benefit of the fraud, though otherwise innocent grantors, they made Leyden their agent. The court stated: 'I received that evidence in the beginning as to Leyden only; and now, as against these defendants, I will allow it to stand, as I held then.' The plaintiff's counsel excepted."

The court then charged the jury, referring to some extent to the evidence, but omitted to state the applicability of the evidence we have referred to,—whether to all the defendants, or otherwise. At the close of the charge the following occurred:

"Mr. Yeoman (the defendants' counsel) asks the court to charge that there is no right to recover, as aginst Osgoodby, by reason of any statement made by Leyden to the plaintiff. (Declined, and exception.) Mr. Yeoman: I make the same request in behalf of McKenney, Roe, Richards, Walker, and Raymond, each separately. (Declined, and exception for each separately.)"

The same request was made on behalf of Osgoodby by reason of any statement made by Richards to the plaintiff; the same request in behalf of McKenney and each of the other defendants; also, in behalf of Osgoodby by reason of any statement made by Raymond; also, same request as to each of the other defendants separately; also, in behalf of Osgoodby by reason of any statements made to plaintiff by Proctor, and the same request as to each of the other defendants; and the same as to the defendant Roe. All of which requests the court declined to grant. It is claimed by the learned counsel for the respondents that, the court having declined to charge as above stated, it was equivalent to the court finally charging the jury that the statements and representations of Leyden, Richards, Raymond, and Roe (the five active parties in the transaction) was evidence against all of the defendants, and cured any error, if any, that occurred in the rulings of the court upon the reception of the evidence. In this we cannot concur. These facts establish that the appellant's contention is well founded. It was the duty of the court to clearly state to the jury the extent to which the evidence of the representations of Leyden and others was binding upon all the defendants, so that they might act intelligently upon the subject. To the lay mind, at least, because of the different rulings, and the refusal to apply the evidence of the statements of the active defendants to all the defendants, as requested, before the charge was made, coupled with the simple declension to charge as requested, much doubt and uncertainty would exist as to how they might regard the evidence,—whether they should hold it binding upon a portion, only, or upon all, of the defendants, and, if this responsibility was to be apportioned among the defendants, how it should be done; and, under such uncertainty, the jury might be led to a verdict exonerating all of the defendants, as the only solution of the difficulty, when, if they had been properly charged, the result might have been otherwise.

We are now led to consider whether the evidence was applicable to all the defendants. It is claimed by the respondents' counsel that the defendants who took no part in making the representations upon which the plaintiff relied were innocent of any intent to defraud,

and that their participation in the benefits of the transaction does not make them liable in this action of fraud, and they can only be made liable in equity. It was said in Garner v. Mangam, 93 N. Y. 643, in an action to recover damages for an alleged fraud, where it was claimed that false representations had been made by one of the defendants to induce the plaintiff to purchase stock, where several defendants had united in the sale of the stock:

"It was not a sale of forty shares by each defendant separately, but a sale of one hundred and twenty shares as one parcel, made up by a contribution of forty shares by each defendant. Each therefore became the agent of the others in making the sale, and each became responsible for the representations made by the others. Pratt could not receive the fruits of the bargain, without being responsible for the fraud through which it was effected;" citing many cases.

In Krumm v. Beach, 96 N. Y. 398 et seq., which was an action against husband and wife for fraud in the sale of land, it appeared that the husband assumed to act as agent for the wife, and made the representations complained of without her knowledge. The title to the land conveyed was in the wife, and she conveyed it, retaining most of the proceeds of the sale. The wife was held liable, and Judge Finch says at page 404:

"The case therefore is brought within the rule which makes her receipt and retention of the fruits and product of the fraud involve a liability on account of it, although herself innocent of a personal participation in the wrong;" citing Garner v. Mangam, supra, and other cases; Crans v. Hunter, 28 N. Y. 389.

A principal cannot claim the benefit of a purchase obtained by his agent by the use of misrepresentations, and at the same time repudiate the representations as unauthorized. Lane v. Black, 21 W. Va. 617, cited in 1 Am. & Eng. Enc. Law (2d Ed.) p. 1192. And such is undoubtedly the law of this state, whatever conflict upon this subject may have existed elsewhere.

The plaintiff's counsel offered in evidence the report of a receiver who had been appointed in an action to wind up the affairs of the corporation and distribute its assets. The defendants' counsel objected to this, which was sustained, and the evidence excluded. We think that this report should have been received, as it was competent upon the question of the amount of the property of the corporation, and as to its insolvency. The error, however, was not a serious one, as the receiver testified that he received altogether $9,095.75 of the assets of the concern, and that the debts, altogether, exceeded $32,000.

The foregoing leads to the conclusion that the judgment and order appealed from should be reversed, and a new trial granted, with costs to abide the event. All concur, except ADAMS, J., not voting.