## REYNOLDS v. LEYDEN et al.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

CORPORATIONS—SALES OF STOCK—·FRAUD.

> Where one is induced by the fraudulent representations of certain of the directors and stockholders of a corporation to purchase stock, some of which is owned by each of the directors and stockholders, who receive their share of the price, the representations of the individuals are binding on all, and each becomes responsible therefor.

Action by John A. Reynolds against Maurice Leyden and others. The complaint was dismissed at the close of plaintiff's evidence, and he moved for a new trial; the exceptions being ordered to be heard by the appellate division in the first instance. Sustained.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

John Van Voorhis, for plaintiff.

George F. Yeoman, for defendants Leyden, Osgoodby, McKenney, Richards, and Walker.·

Ednor A. Marsh, for defendants Proctor and Raymond.

C. D. Kiehel, for defendant Roe.

FOLLETT, J. This action was begun March 15, 1895, to recover damages for alleged false representations in respect to the value of the capital stock of the Proctor-Raymond Electric Company, part of which was purchased by the plaintiff of the defendants. All the individual defendants served separate answers, but the corporation made default. On the first trial a judgment was entered on a verdict, dismissing the complaint on the merits, which was reversed and a new trial granted by this court for a misdirection of the trial judge, and for an error in the exclusion of evidence. 24 App. Div. ·395, 48 N. Y. Supp. 1078.

March 30, 1893, the Proctor-Raymond Electric Company was incorporated under chapter 567 of the Laws of 1890,—the business corporation law,—as amended by chapter 691 of the Laws of 1892 (2 Rev. St. [Banks' 9th Ed.], p. 1384), with a capital stock of $20,000, divided into 200 shares, of the par value of $100 each. The purposes for which it was incorporated, as stated in its articles, were:

"Second. The objects for which said corporation is to be formed are the invention, improvement, manufacture, and sale of electrical inventions, devices, machines, apparatus, and supplies, to be located and carried on at the city of Rochester, in the county of Monroe, and state of New York."

March 24, 1894, the capital stock of the corporation was increased from $20,000 to $30,000, pursuant to section 44 et seq. of· chapter 688 of the Laws of 1892 (2 Rev. St. [Banks' 9th Ed.] p. 1020). All of the individual defendants in this case were incorporators, as was also William O. Raymond; and all of them were directors named in the articles of association, except William W. Osgoodby and Nelson H. Raymond, who subsequently became directors,—but when, the record does not show. When the transactions complained of occurred, all of the individual defendants were stockholders and directors of the corporation, except Franklin C. Walker, who was

simply a stockholder. April 18, 1895, an action was begun by Nelson H. Raymond, one of the defendants herein, to dissolve the corporation on the ground of its insolvency; and April 20, 1895, Darius H. Marsh was appointed temporary receiver, and June 24, 1895, he was appointed permanent receiver, under the final judgment in the action, under which the affairs of the corporation have been wound up, its property sold, and the avails found insufficient to pay its liabilities. The life of the corporation was brief,—about two years,—and its business operations were not so large nor so complicated that its officers and directors should not, April 1, 1895, have known its financial situation. April 1, 1895, 245 shares of the stock had been issued, leaving 55 shares unissued. How much was paid into the corporation for the issued shares, or who held them April 1, 1895, does not appear, except it does appear that Maurice Leyden held 25 shares, George Richards 45 shares, William W. Osgoodby 25 shares, Solon A. McKenney 10 shares, Charles Roe 10 shares, and Franklin C. Walker 5 shares, which they contracted to sell to the plaintiff. This statement of the amount of shares held by the defendants is taken from the contract of April 1, 1895, as printed on pages 176 et seq. of the case, which does not correspond with the same contract, printed as Exhibit No. 8, at page 160. It is alleged in the complaint that the plaintiff, by the misrepresentations of the defendants, was induced to purchase their shares in the corporation, and relieve them from their liabilities as indorsers and guarantors on the paper of the corporation, and also pay to the defendants various sums advanced by them to the corporation, amounting to several thousand dollars, and advance to the corporation $10,000. It is alleged that these defendants entered into a scheme by which they undertook to induce, and did induce, this plaintiff to enter into this contract and make this advance, for the purpose of relieving themselves from liability and defrauding the plaintiff, and that, to induce the plaintiff to make the purchase, it was represented to him by said defendants that the corporation was solvent, that the business was a prosperous one, that its products were sold at a large profit, that the merchandise and materials on hand were worth more than $14,500, and that the corporation had a credit of several hundred dollars in bank; and it is also alleged that these representations were untrue. The uncontradicted evidence given on the trial shows that these representations were made, that they were untrue, and that the plaintiff relied upon them in making the advance. April 18, 1895, Maurice Leyden, one of the defendants, wrote the plaintiff a letter, of which the following is a copy:

"April 18, 1895.

"To John A. Reynolds: As president of the Proctor-Raymond Electric Company, I honestly believe the statements were true, as made by me and others of our directors to you, namely, that the company was solvent; that the merchandise and unmanufactured materials would inventory several thousand dollars more than shown by the statement of April 1st, given you; that the business was a good, paying one; the profits on some of its products were 100 per cent.; that $10,000 in cash would be sufficient to run the business. I believe that receipts from sales would take care of existing obligations, renewals being granted on accommodation paper at bank. But, since the investigation and inventory just made, I am convinced that those statements

were misleading, and not what I had reason to believe would be found. I do, therefore, hereby—acting for myself only—release you from any liability, so far as I am personally concerned. If I had known the true state of affairs, as I now know and understand it, I should never have suggested or advised you to be or become interested in the company in any way.

                             "Maurice Leyden."

This letter clearly shows that the representations testified to by the plaintiff were made, and the letter seems quite inconsistent with Leyden's answer, verified July 19, 1895, denying that any false representations were made. Without entering into detail, the plaintiff testified that like representations were made by Richards, Roe, Proctor, and Raymond. The undisputed evidence was sufficient to authorize the jury to find that all these directors who signed the contract of April 1, 1895, conspired to induce the plaintiff to invest in the property of the corporation, and that they acted with a common purpose. Under this state of the evidence, all of the defendants who participated in this transaction were bound by the acts of their co-defendants in consummating the scheme; and the declarations of each of them, made before the consummation of the scheme, were admissible in evidence against the other participating defendants.

The nonsuit granted in this case seems to me to be directly at variance with the former decision of this case by this court. 24 App. Div. 395, 48 N. Y. Supp. 1078.

The record in this case is most wretchedly prepared. The agreement of April 1, 1895, is twice printed, but they are not alike. At folio 190 it appears that the proceedings of the board of directors of the corporation of April 1, 1895, were introduced in evidence, and marked as "Exhibit 9." These resolutions are important, but they are nowhere found in the record. Exhibit 9 appears at folio 647, and is a copy of the $10,000 note. Many other like defects might be pointed out. Nevertheless, there is sufficient in the record to require the granting of a new trial.

Plaintiff's exceptions should be sustained, and a new trial granted, with costs to the plaintiff to abide the event. All concur, except ADAMS, J., not voting.